Paul J. **STAUTZENBERGER,**
Appellant

v.

The **STATE** of Texas, Appellee.

No. 14–06–00451–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 7, 2007.

Paul J. Stautzenberger, Georgetown, pro se.

Jay Elgin Johannes, Columbus, for State.

Panel consists of Chief Justice HEDGES and Justices HUDSON and GUZMAN.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Paul Joseph Stautzenberger, appeals his conviction after a bench trial of the Class B Misdemeanor offense of driving while license invalid. TEX. TRANSP. CODE ANN. § 521.457 (Vernon 2007). The trial court found appellant guilty and assessed his punishment at 30 days in jail and a $500 fine. Appellant, who represented himself, pro se, both at trial and on appeal, presents five points of error: (1) the evidence is legally insufficient to support his conviction; (2) the trial court erred in allowing the State to amend the information after it had rested its case; (3) the trial court erred in admitting State's exhibit # 2 where evidence showed it was invalid on its face; (4) the trial court erred in sustaining the State's objection to questioning a witness regarding a specific element of the crime; and (5) appellant was subjected to double jeopardy by levying a second fine not included in the original sentence. We affirm.

On September 11, 2005, Trooper Wayne Pierce of the Texas Department of Public Safety stopped appellant for exceeding the posted speed limit. Pierce requested appellant produce his license and insurance. Appellant was unable to produce his license, claiming it had expired in 1997. When asked why he did not have a driver's license, appellant told Pierce he did not "believe in the validity of a Texas driver's license." He did, however, give Pierce his name and date of birth. Pierce transmitted this information by radio and was informed appellant's license had been suspended on December 8, 2004. Appellant was arrested and subsequently convicted of driving while license invalid.

In his first point of error, appellant contends the evidence is insufficient to support his conviction because the State failed to present any evidence that (1) he was driving a motor vehicle, (2) upon a highway, (3) while his license was suspended. TEX. TRANSP. CODE ANN. § 521.457(a)(2).[1] Appellant's first contention is utterly frivolous. Trooper Pierce testified that appellant was driving a motor vehicle:

Q. What unusual thing did you observe?

A. Approximately 3:05 as I was traveling west on Highway 71 I observed a white Ford Ranger traveling east above the posted speed limit of 70. Verified it with radar.

Q. What type of vehicle was that?

A. White Ford Ranger.

Q. Is that a motor vehicle?

A. Yes.

On cross-examination, appellant posited his defense on the following line of questioning:

Q. [You] stated that I intentionally or knowingly operated a motor vehicle. You talked about a white Ford Ranger.

It may sound silly, but can you tell me how do you know that that is a motor vehicle?

A. It's registered under the Transportation Code. It has four wheels, a motor, engine, everything to meet the criteria of a motor vehicle.

Q. Did you see a motor?

A. Just knowing that it [was] there.

Q. You just knew it had a motor? Okay.

We agree with appellant's characterization of his defensive theory as "silly." We take judicial notice that a "white Ford Ranger," moving at 78 miles per hour, on a public road in Colorado County is, in fact, a "motor vehicle." *See Lee v. State,* 168 Tex.Crim. 348, 327 S.W.2d 582, 583 (1959) (holding the court could take judicial notice that a "yellow Dodge pickup" was a "motor vehicle").

Appellant also asserts the State failed to prove he was driving on a "public highway." Trooper Pierce, however, unequivocally testified that he observed appellant driving on Highway 71, a public highway. The term "highway" is defined in the Transportation Code as "a street, alley, or public place or square that is dedicated to public use," but such definition is not applicable to Chapter 521. *See* TEX. TRANSP. CODE ANN. § 312.001 (Vernon 1999) (limiting the applicability of the definition to Subchapters B and C of Chapter 312). Unless the legislature has specifically defined a statutory term, words used in a statute are to be understood in their ordinary usage. *Oler v. State,* 998 S.W.2d 363, 368 (Tex.App.-Dallas 1999, pet. ref'd). In common usage, the term "highway" means "a road or way on land or water that is open to public use as a matter of right whether or not a thoroughfare." WEB-

---

1. Section 521.457, driving while license invalid, states, in pertinent part:

(a) A person commits an offense if the person operates a motor vehicle on a highway:

(1) after the person's driver's license has been canceled under this chapter if the person does not have a license that was subsequently issued under this chapter;

(2) during a period that the person's driver's license or privilege is suspended or revoked under any law of this state;

(3) while the person's driver's license is expired if the license expired during a period of suspension; or

(4) after renewal of the person's driver's license has been denied under any law of this state, if the person does not have a driver's license subsequently issued under this chapter.

TEX. TRANSP. CODE ANN. § 521.457(a).

STER'S THIRD NEW INTERNATIONAL DICTIONARY 1069 (1993). Again, we take judicial notice that State Highway 71 is a "highway" that runs approximately 253 miles beginning near Brady in the north and ending near Blessing in the south.

■ Finally, appellant claims his license expired in 1997, and the State failed to prove that his license was suspended at the time of the alleged offense. If, as appellant contends, his license expired in 1997 and was not thereafter renewed, he cannot be convicted of driving while his license was suspended because he had no license that was in a state of suspension. *See Bryant v. State*, 163 Tex.Crim. 544, 545, 294 S.W.2d 819, 819 (1956) (holding where defendant's license expired and had not been renewed, the evidence was legally insufficient to support a subsequent conviction for driving while license suspended).

■ However, appellant was not charged solely with driving while license suspended. Rather, appellant was charged, in a single paragraph, with three distinct manner and means of driving while license invalid, i.e., (1) driving after his license had been cancelled; (2) driving during a period when his license had been suspended or revoked; and (3) driving while his license was expired and the license expired during a period of suspension. TEX. TRANSP. CODE ANN. § 521.457(a)(1), (2) & (3). We note that it is proper for the State to plead alternative "manner or means" in the conjunctive when proof of any one "manner or means" will support a guilty verdict. *Johnson v. State*, 187 S.W.3d 591, 604 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd).

Thus, a conviction may lawfully be had through proof of only one of the alternative means alleged for committing the offense. *Price v. State*, 59 S.W.3d 297, 301 (Tex.App.-Fort Worth 2001, pet. ref'd). Accordingly, the evidence is sufficient here if the State proved appellant was driving while his license was cancelled, suspended, revoked, or expired (if the license expired during a period of suspension).

In an attempt to meet its burden of proof, the State introduced a certified copy of appellant's driving history into evidence. The record reflects:

| | |
|---|---|
| 6/26/1986 | appellant issued a Texas driver's license scheduled to expire on 3/24/1997 |
| 6/18/1996 | appellant's driver's license suspended until 9/15/1996 for refusing to submit to a blood/urine test |
| 11/26/1996 | cited for driving without liability insurance (convicted 1/6/1999) |
| 2/24/1997 | cited for driving without liability insurance (convicted 2/12/1998) |
| 4/18/1997 | cited for driving without liability insurance (convicted 10/23/1997) |
| 6/28/1997 | cited for driving without liability insurance (convicted 8/5/1997) |
| 7/4/1997 | cited for driving without liability insurance (convicted 10/23/1997) |
| 9/1/1997 | cited for driving while license suspended (convicted 3/2/1998) |
| 10/17/2003 | cited for driving without a license (convicted 10/17/2003) |
| 11/3/2004 | notified by mail of surcharge assessed due to conviction for driving without a license |
| 12/8/2004 | driver's license suspended for failure to pay license surcharge |

Thus, appellant's driver's license was scheduled by its own terms to expire on March 24, 1997. Nine months before his license was scheduled to expire, appellant's license was suspended for 90 days for refusing to submit to a blood or urine test. *See* TEX. TRANSP. CODE ANN. § 724.035(a)(1) (Vernon 1999).[2] In such case, the legislature has provided that a license suspended for failure to provide a specimen "may not be reinstated ... until the person whose license has been suspended pays to the department a fee of $100." TEX. TRANSP. CODE ANN. § 724.046(a) (Vernon 1999).[3]

---

**2.** Section 724.035(a)(1) was amended in 2001 increasing the period of suspension from 90 days to 180 days. *See* Act of May 16, 2001, 77th Leg., R.S., ch. 444, § 10, 2001 Tex. Gen. Laws 880.

**3.** Section 724.046 was amended in 2001 increasing the fee from $100 to $125. *See* Act

Here, there is no evidence to suggest appellant ever paid the $100 fee or that his license was reinstated.

Because there is no evidence that appellant paid the reinstatement fee, the question then arises as to whether appellant's license has remained in a state of perpetual suspension since June 18, 1996. The Court of Criminal Appeals addressed this very issue in *Allen v. State*, 48 S.W.3d 775 (Tex.Crim.App.2001). There the court held that rather than being in a state of indefinite suspension, a person whose license is suspended must pay the reinstatement fee before the expiration of his period of suspension or immediately lose his license. *Id.* at 777. In other words, if the person does not timely pay the reinstatement fee, he takes on the status of an unlicensed driver. The court did not ascribe a name to this phenomenon, but it is difficult to characterize this event as anything other than a "revocation" of the license.[4] Certainly, the license cannot be said to have "expired" by its own terms.

The term "revocation" is not defined in Chapter 521 of the Transportation Code. While specific examples of "revocation" may be found in Chapter 521,[5] the legislature has not suggested these examples constitute an exclusive list of how a license may be revoked. Section 521.457(a)(2) makes it an offense for a person to operate a motor vehicle on a highway after his license has been revoked "under any law of this state." Tex. Transp. Code Ann. § 521.457(a)(2). Because the record shows appellant lost his license before it expired, we find the evidence legally sufficient to show appellant was driving after his license had been revoked. Accordingly, the evidence is legally sufficient to support his conviction of driving while license invalid. Appellant's first point of error is overruled.

In his second point of error, appellant contends the trial court erred in permitting the State to modify the information during closing argument after the State had rested its case. The information contained an enhancement paragraph that alleged the existence of a previous conviction for driving while his license was suspended. The State offered no evidence in support of the enhancement paragraph and affirmatively abandoned the allegation.

 "An ... information may not be amended over the defendant's objection as to form or substance if the amended ... information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced." Tex.Code Crim. Proc. Ann. art. 28.10(c) (Vernon 2006). However, a "different offense" means a different *statutory* offense. *Flowers v. State*, 815 S.W.2d 724, 728 (Tex.Crim.App.1991). Thus, an amendment to an information is a change that affects the substance of the information. An enhancement paragraph is not

---

of May 16, 2001, 77th Leg., R.S., ch. 444, § 14, 2001 Tex. Gen. Laws 881.

**4.** "Revoke" means "to annul by recalling or taking back." Webster's Third New International Dictionary 1994 (1993).

**5.** Revocation of a license may occur if a person who is required to register as a sex offender fails to renew his driver's license within 30 days after being released from a penal institution or placed on community supervision. Tex. Transp. Code Ann. § 521.348 (Ver-

non 2007). Revocation may occur if a person is chemically dependent or incapacitated. Tex. Transp. Code Ann. § 521.319 (Vernon 2007). Revocation may also occur if a person is incapable of safely operating a motor vehicle or has failed to provide medical records to the medical advisory board. Tex. Transp. Code Ann. § 521.294 (Vernon 2007). Here, the State offered no evidence that appellant's license had ever been revoked under any defined statutory procedure.

part of the State's case-in-chief and it is not part of the "substance" of an indictment or information. In fact, enhancement allegations need not be pled on the face of the charging instrument. *Johnson v. State*, 214 S.W.3d 157, 158 (Tex.App.-Amarillo 2007, no pet.). As such, enhancement allegations are mere surplusage. *Id.* The abandonment of surplusage does not invoke the requirements of Article 28.10(c) of the Code of Criminal Procedure. *Chavis v. State*, 177 S.W.3d 308, 311 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd). Thus, the State may, with the permission of the trial court, abandon an enhancement paragraph. *Hall v. State*, 862 S.W.2d 710, 714 (Tex.App.-Beaumont 1993, no pet.). Appellant's second point of error is without merit and overruled.

■ In his third point of error, appellant makes a collateral attack upon one of his previous convictions, i.e., the judgment of a trial court in Comal County that he claims violated the double jeopardy provisions of the Texas Constitution by imposing a reinstatement fee that was not part of the original sentence. Appellant contends his failure to pay the unlawful reinstatement fee in the Comal County case is the only basis for the continued suspension that is the basis of the instant offense. Appellant's point is wholly without merit because it constitutes an impermissible collateral attack. Only a void judgment may be collaterally attacked. *Henderson v. Chambers*, 208 S.W.3d 546, 550 (Tex.App.-Austin 2006, no pet.). A judgment is void only when it is apparent that the court rendering judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Id.* Moreover, this issue has been previously addressed and decided contrary to appellant's position. In *Ex parte Drake*, 212 S.W.3d 822, 827 (Tex.App.-Aus-

tin 2006, pet. ref'd), the Third Court of Appeals held a license surcharge or reinstatement fee is not a criminal punishment in violation of the double jeopardy guarantee against multiple punishments. We agree.

Finally, in the case presented here, appellant's conviction for driving while license invalid does not rest solely on the theory that he was driving while his license was suspended. Rather, the evidence supports a conviction for driving after his license was revoked. Appellant's third point of error is overruled.

■ In his fourth point of error, appellant argues the trial court erred in admitting State's exhibit # 2 into evidence when the exhibit was invalid on its face. The record reflects the State's attorney offered a certified copy of appellant's driving history into evidence as State's exhibit # 2. Appellant expressly stated he had no objection to the exhibit. To preserve an issue for appeal, a party must timely object, stating the specific legal basis for his objection. Tex.R.App. P. 33.1(a)(1); *Batiste v. State*, 217 S.W.3d 74, 81 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Appellant's fourth point of error is overruled.

In his fifth point of error, appellant contends the trial court erred when it sustained the prosecutor's objection when he asked Trooper Pierce how he "knew the road to be public." During his cross-examination of Trooper Pierce, appellant posed the following question:

Q. Again, it may sound a little odd. I want to ask the question, but then let me explain it because I want to be real clear.

My question is, how do you know that's a public highway?

For the explanation, I wanted to know what a public highway was, and I went and looked up and couldn't find a defini-

tion for a public highway in the Transportation Code. But I did find that the legislature kind [of] moved that around and they had decided to use the word "public road" and said any time they called it "public road" they meant "public highway" too. So, I knew that if I knew what a public road was then I would know what a public highway was.

So, I looked for public roads and it described that a public road or—

MS. OLSON [the State's attorney]: Your Honor, I'm going to object to him testifying. If he wants to ask the witness questions that would be fine.

THE COURT: Sustained.

The State did not object to the question "how do you know that's a public highway." Rather, the State objected to appellant's rambling, side bar explanation for his question.[6] The trial court should rigidly repress side bar remarks, and the State's objection was properly sustained. *Garrett v. State*, 998 S.W.2d 307, 318 (Tex. App.-Texarkana 1999, pet. ref'd). Appellant's fifth point of error is overruled.

At the sentencing hearing, Judge Al Jamison said, "Mr. Stautzenberger, you're playing with the system and I deeply resent that." We agree. Appellant has apparently been driving without a valid driver's license for the last decade, and Texas jurisprudence is littered with his frivolous appeals. It appears he has been repeatedly convicted of such offenses as failing to display an operator's license, failing to maintain financial responsibility, operating an unregistered motor vehicle, speeding, driving while intoxicated, driving without a license, and driving while license invalid.[7] No penalty imposed thus far seems to have had any effect on appellant's behavior. To the contrary, he openly avows the Texas driver's license statutes are invalid, and he has persuasively demonstrated his ability to continue driving with relative impunity. "Laws that cannot be enforced corrupt,"[8] and appellant has exposed a shocking impotence on the part of this State to successfully enforce its driving statutes. Unless the legislature provides more stringent penalties for repeat offenders in the Transportation Code, this scandalous parody will likely continue.

The trial court's judgment is affirmed.

GUZMAN, J., concurring in the result only.

**6.** Side bar remarks are remarks of counsel that are neither questions to the witness nor comments addressed to the court. *Brokenberry v. State*, 853 S.W.2d 145, 152 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd).

**7.** *See Stautzenberger v. State*, No. 03-03-00598-CR, 2005 WL 1240693 (Tex.App.-Austin May 26, 2005, no pet.) (not designated for publication); *Stautzenberger v. State*, No. 03-03-00410-CR, 2004 WL 1114493 (Tex.App.-Austin May 20, 2004, no pet.) (not designated for publication); *Stautzenberger v. State*, No. 05-98-00711-CR, 1999 WL 993859 (Tex.App.-Dallas Nov.2, 1999, pet. ref'd) (not designated for publication); *Stautzenberger v. State*, No. 05-97-00747-CR, 1998 WL 546149 (Tex.App.-Dallas Aug.27, 1998, no pet.) (not designated for publication); *Stautzenberger v. State*, No. 03-96-00665-CR, 1997 WL 420999 (Tex.App.-Austin Jul. 24, 1997, no pet.) (not designated for publication); *Stautzenberger v. State*, No. 03-97-00313-CR, 1997 WL 333447 (Tex.App.-Austin Jun.19, 1997, no pet.) (not designated for publication).

**8.** R. CLARK, CRIME IN AMERICA (1970), at 41.